UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

IRA STEPHENS, ON BEHALF
OF JAMARK L. JACKSON                    CIVIL DOCKET NO. 06-1417

versus                                   JUDGE WALTER

COMMISSIONER SOCIAL                      MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

Ms. Ira Stephens filed an application for Supplemental Security Income payments on behalf of her nephew, Jamark Jackson. The child was born in September of 1998, and he was seven-years old when ALJ Linda Sybrant denied the claim in March 2006. The child suffers from asthma, and he has exhibited emotional and behavioral problems. The Appeals Council found no basis to review the decision, so the ALJ's decision became the Commissioner's final decision. Ms. Stephens filed this action for judicial review pursuant to 42 U.S.C. § 405(g). For the reasons that follow, it is recommended that the Commissioner's decision be reversed and the case be remanded for further proceedings.

**The ALJ's Decision**

A child is considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or last a continuous period of at least one year. 42 U.S.C. §

1382(c)(a)(3)(C)(I). The Commissioner has published regulations to implement that standard. Those regulations require a three-step evaluation process. 20 C.F.R. § 416.924.

The first step is to determine whether the child has engaged in substantial gainful activity. If not, the evaluation continues to the second step, which involves a determination of whether the child has an impairment or combination of impairments that is "severe," meaning more than a slight abnormality that causes only minimal functional limitation. The third step involves a determination of whether the child's impairment meets, medically equals, or functionally equals the severity of a listed impairment. § 416.924a(d); Sullivan v. Zebley, 493 U.S. 521, 526 (1990). If so, and the twelve month durational requirement is met, the child is disabled. If not, the child is not disabled. § 416.924(d)(1) and (2). See also Bowie ex rel. Bowie v. Barnhart, 194 Fed. Appx. 241, 243-44 (5th Cir. 2006).

The ALJ found that Jamark passed the first two steps of the evaluation because (1) he had not been working and (2) he suffered from Reactive Attachment Disorder (inhibited type), mood disorder and ADHD, impairments that are severe. She found at step three that Jamark's impairments did not meet or medically equal a listed impairment. She then proceeded to determine whether Jamark had impairments that functionally equaled a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains, listed in § 416.926a(b)(1), are:

(1) acquiring and using information

  (2) attending and completing tasks

  (3) interacting and relating with others

  (4) moving about and manipulating objects

  (5) caring for yourself

  (6) health and physical well-being.

The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he has an *extreme* limitation in *one* domain or a *marked* limitation in *two* domains. 20 C.F.R. § 416.926a(d).

A marked limitation is "more than moderate" but "less than extreme." It interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. § 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416.926a(e)(3).

The ALJ found that Jamark had *no* limitation in the domains of caring for yourself and moving and manipulating objects. She found that Jamark had a *less than marked* limitation in the domains of acquiring and using information, attending and completing tasks, and health and physical well-being. She found that he had a *marked* limitation of functioning in the domain of interacting and relating with others. The child did not have an extreme limitation in any domain and did not have a marked limitation in two domains, so he was found to be not disabled within the meaning of the regulations.

**Issues on Appeal**

Plaintiff argues that there is not substantial evidence to support the ALJ's findings that (1) Jamark has a less than marked limitation in the domain of attending and completing tasks and (2) Jamark has no limitation in the domain of caring for yourself. If the degree of limitation in either of those domains were deemed marked, Jamark would have a marked limitation in two domains and would be considered disabled.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there

are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**The Evidence**

Jamark entered kindergarten in the fall of 2003, and his teacher quickly referred him for an evaluation of possible special education needs. When Jamark entered kindergarten, he could not color, cut on lines, trace, recognize his name, or recognize any letters or numbers. His social skills were also weak. Even after the third nine-weeks period, Jamark could not recognize several letters of the alphabet. Teachers had tried several seating changes, peer tutors, repeated directions and other efforts to improve Jamark's performance, but without success. Tr. 70-71.

A family interview was conducted in November 2003 with Ms. Stephens, who obtained legal custody of Jamark in 2002. The child's mother lives in the area but maintains inconsistent contact. His father does not maintain contact.

Ms. Stephens said that Jamark was a bully and aggressive with his siblings and cousin. The behavior has resulted in him being "barred" from the neighborhood park. The child also does not listen or obey well. Tr. 73.

Jamark was seen by a physician in October 2003. The diagnosis was Reactive Airway Disease and Attention Deficit Hyperactivity Disorder, for which medication was prescribed. In a student observation, Jamark was observed to begin work on an activity sheet before directions were given. Soon after the instructions were given, Jamark appeared unable to

complete the assignment and started to roll up his paper. He broke a crayon and banged on his desk with it. When the teacher asked a question, Jamark waived his hand and jumped up and down in his seat. Tr. 74.

Jamark was observed to be off task 50% of the observational period. He was also found to have difficulty keeping his hands to himself while in line for the bathroom, lunch, etc. He puts his hands on other children, which causes a disruption. Tr. 78.

Jamark was evaluated for occupational therapy in January 2004. He was able to follow directions and was polite and cooperative during the testing. It was noted that Jamark was independent with all activities of daily living tasks, including dressing, feeding and toileting. Tr. 81-82.

The evaluation summary included the finding that Jamark exhibits "a severe disability which substantially limits the major life activity of learning" and that his social-emotional functioning was an area of concern. "Symptoms associated with ADHD are severe in nature and significantly interfere with Jamark's classroom performance." Tr. 83.

Despite the individual educational plan that was put in place for Jamark after the evaluation, the child did not pass from kindergarten into the first grade at the end of the 2003-04 school year. He repeated kindergarten in the 2004-05 year, and his aunt reported at the hearing in August 2005 that Jamark was in special education and hoped to start the first grade that fall. She reported that Jamark was taking three different medications in an effort to treat his ADHD and they were helping calm Jamark some in the morning, but by evening

he is back to his problem behavior. The child, who would turn seven the next month, was reported to not want to go to sleep and would stay up fighting. Ms. Stephens added that Jamark liked sports and was good at them. He refused to do chores like empty a trash can or pick up his clothes. Jamark gets along with the older child in the house, but with the younger two children "he keeps them crying." Neighborhood children complain that Jamark will hit them with a bat or throw rocks, which requires Ms. Stephens to keep Jamark at home.

Ms. Stephens helps Jamark get dressed in the morning. She said that without help he would put his clothes on inside out or backwards. When she tells Jamark to take a bath, he will go in the bathroom and stand until she goes in to make sure he bathes. Ms. Stephens reported that Jamark's teacher is constantly calling her and telling her that Jamark would not listen or was fighting on the playground. Jamark enjoys sports, but Ms. Stephens said the games do not last for long because someone, either Jamark or another child, will soon be crying. If Ms. Stephens makes Jamark go to his room, he tears up the room, including kicking holes in the wall and just "kick, kick, kick until he go to sleep." Tr. 148-62. The ALJ attempted to question Jamark, but he was wholly unresponsive. Tr. 163-64.

A report from Dr. Manchandia stated that he had prescribed Adderall to Jamark in October 2003 to treat ADHD. By December, the child was "doing well" on the drug, but Ms. Stephens reported in June 2004 that the child had not been taking the Adderall. After discussion, Dr. Manchandia changed the prescription to Strattera. At the final reported visit,

about three weeks later, the physician recorded that Jamark was "doing okay on the Strattera." Tr. 109.

After the hearing, the ALJ referred Jamark for a consultative evaluation by Dr. Perry Hill, a psychologist. Ms. Stephens gave Dr. Hill a family history consistent with her testimony at the hearing. She reported that Jamark was then taking Ritalin. Jamark did not exhibit any hyperactive or disruptive behavior throughout the assessment, but he did "show a very poor and unusual manner of interaction with the examiner." The child did not respond to a greeting, made no spontaneous comments, and made no response to many direct questions. Dr. Hill also administered written tests. His diagnostic impressions were Reactive Attachment Disorder, mood disorder, reading disorder, and ADHD. He noted that Jamark had a "well established, chronic, and diffuse pattern of failure to initiate and respond to social situations in a developmentally appropriate way." The child also did not "show normal interactions and relationships with peers or with family," and his social interactions included a "severe aggressive component." Dr. Hill was uncertain whether Jamark's difficulties with concentration and attention in the classroom should be attributed to a learning disability, mood problems, or other factors unrelated to ADHD. Tr. 143-45.

**Attending and Completing Tasks**

The domain of attending and completing tasks considers how well the child is able to focus and maintain attention, and how well can begin, carry through, and finish activities. Attention involves regulating levels of alertness and the ability to filter out distractions and

to remain focused on an activity at a consistent level of performance.  It means that if the child loses focus in the middle of a task, he is able to return to the task without other people having to remind him frequently to finish.  School age children (ages six to 12) should be able to focus attention in a variety of situations, to follow directions, remember and organize school materials, and complete classroom and homework assignments.  The child should be able to concentrate on details and not make careless mistakes in his work.  He should be able to stay on task, change routines without distracting himself or others, and sustain attention well enough to participate in group sports or complete family chores.  The child should be able to complete a transition task, such as getting ready for the school bus, changing clothes after gym, or changing classrooms without extra reminders and accommodation. 20 C.F.R. § 416.926a(h).

The ALJ recited the relevant regulations and concluded that Jamark had "less than marked" limitation in attending and completing tasks.  Her one-paragraph analysis notes the prescription of Adderall at the request of a teacher and that Jamark later demonstrated no hyperactivity or distractability during the examination by Dr. Hill.  The ALJ does not state so directly, but the clear implication of her decision is that she believed that the Adderall[1] had relieved Jamark's well-documented attentiveness problems in the classroom and at home.

---

[1] Dr. Hill recorded that Ms. Stephens told him that Jamark was taking Ritalin at the time of the examination.

Counsel for Jamark urges that the ALJ placed undue emphasis on the one-time examination by Dr. Hill. She cites 20 C.F.R. § 416.924a(b)(6). That regulation states that children may function differently in unfamiliar or one-to–one settings than they do in their usual settings at home, school or in the community. A child "may appear more or less impaired on a single examination (such as a consultative examination) than indicated by the information covering a longer period." Accordingly, the agency is to look at the child's performance in a special situation and routine situations. The agency "will not draw inferences about your functioning in other situations based only on how you function in a one-to-one, new or unusual situation." Id.

"The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). See also Cole v. Barnhart, 288 F.3d 149, 151 (5th Cir.2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). The decision before the court contains very little analysis of the domain of attending and completing tasks, and the analysis that is present rests almost exclusively upon the suggestion that the prescription medication has reduced the ADHD and related symptoms to a less than marked limitation. Dr. Hill's report is the only bit of evidence in the record that supports that conclusion, and the regulation cited by counsel for Jamark explains that the agency may not rely on that single, unfamiliar situation to base a finding of Jamark's level of functioning.

All of the other evidence of Jamark's behavior in more typical settings casts doubt on whether what Dr. Hill observed was normal or usual behavior.

The ALJ relied heavily, if not exclusively, on Dr. Hill's report in reaching her finding in this domain. The cited regulation and the other evidence deprive the decision, as written, of substantial evidence to support it. The record is not so clear, however, to require the court to make a finding that Jamark has a marked limitation in this domain, so a reversal and remand is in order. If, on remand, the other findings remain the same but a marked limitation is found in the domain of attending and completing tasks, Jamark will be considered disabled.

The court need not reach the second appellate issue regarding the domain of caring for yourself, other than to state that the record does not mandate that the court enter a finding of a marked or greater limitation in that domain. Therefore, even if the court proceeded to discuss the issue and found the Commissioner's finding with respect to that domain not supported by substantial evidence, the relief ordered by the court would not change. The parties are, however, free to explore that and any other relevant issues on remand. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **reversed** and that this case be **remanded** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 20th day of July, 2007.

*[signature]*
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE